FRANCIS RAYMOND EDWARDS AND HELENE EDWARDS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edwards v. Commissioner
Docket No. 9752-90
United States Tax Court
T.C. Memo 1992-540; 1992 Tax Ct. Memo LEXIS 567; 64 T.C.M. (CCH) 728; September 15, 1992, Filed *567 Decision will be entered under Rule 155. For Francis Raymond Edwards and Helene Edwards, pro sese. For Respondent: Deirdre A. Whittaker and Kristine A. Roth. KORNER
KORNER
MEMORANDUM OPINION KORNER, Judge: By statutory notice of deficiency dated February 21, 1990, respondent determined deficiencies in and additions to petitioners' joint Federal income tax as follows: Additions to Tax [1]
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1986
$ 11,159
$ 558
*
$ 2,790
1987
11,304
565
*
2,826
The issues to be decided are: (1) Whether petitioners had unreported income of $ 10,040 and $ 13,594 in 1986 and 1987, respectively; (2) whether *568 respondent erred in disallowing $ 18,698 and $ 19,115 in Schedule C business expenses claimed on petitioners' 1986 and 1987 returns, respectively; [2] (3) whether respondent erred in determining that petitioners are liable for self-employment tax for the years at issue; and (4) whether petitioners are liable for additions to tax pursuant to sections 6653(a)(1)(A) and (B) and 6661. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits, to the extent admitted at trial, are incorporated herein by this reference. At the time the petition was filed, both petitioners resided in Rockville, Maryland. During the years at issue, petitioner Helene Edwards worked as a secretary *569 and petitioner Francis Raymond Edwards (hereinafter petitioner or Edwards) operated, as a sole proprietorship, a tree removal and landscaping business, called A-1 Tree Experts Co. Petitioner was also an officer of the American Legion and a member of Amvets in 1986 and 1987. Issue 1. Unreported Income
A. Unexplained Bank Deposits
Taxpayers must keep adequate records and, in their absence, respondent may determine a taxpayer's income by a method which clearly reflects income, including the bank deposits method of income reconstruction. Secs. 446(b), 6001; Nicholas v. Commissioner, 70 T.C. 1057 (1978); Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Respondent relied upon the bank deposits method in determining that Schedule C income was understated for 1986 and 1987 in the amount of $ 9,101 and $ 13,355, respectively. Petitioners have the burden of proving that unexplained deposits do not represent income. [3]Rule 142(a); Reaves v. Commissioner, 31 T.C. 690 (1958), affd. 295 F.2d 336 (5th Cir. 1961). *570 Petitioners assert that the disputed deposits were nontaxable. They claim that they were attributable to deposits into petitioner's personal account of funds belonging to Walter Savage, petitioner's stepbrother. Petitioner testified that his stepbrother had deposited $ 6,000 to $ 7,000 in each of the years at issue into his personal account, and Savage testified that he had deposited only between $ 4,000 to $ 5,000 per year into that account. We are not persuaded as to any amount, since petitioner's and Savage's testimony differed significantly as to the amounts allegedly deposited by Savage into petitioner's account, and no documentary evidence was offered to corroborate the testimony of either of them. See Tokarski v. Commissioner, 87 T.C. 74 (1986); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Based on the record, petitioners have failed to show that respondent's determination of additional Schedule C income based upon the bank deposits method was erroneous. B. Interest
Respondent also determined that petitioners failed to report $ 62 in interest *571 income in 1986. Petitioners presented no evidence as to why this amount was not taxable and therefore have failed to carry their burden of proof with respect to this item. See Rule 142(a). C. IRA Distribution
Petitioner received distributions totaling $ 877 from an individual retirement account (IRA) in 1987. A distribution from an IRA is includable in the distributee's gross income in the year distributed unless one of the exceptions of section 408(d) applies. In addition, unless otherwise excepted, an increase in tax of 10 percent of the amount of the distribution includable in gross income will be imposed in the year of receipt in the case of a premature distribution, which this was. Sec. 72(t). Petitioner and his tax preparer testified that no deduction had been taken (for the funds withdrawn from the account in 1987) at the time such funds were contributed to the account, but no further evidence was offered. Petitioners failed to explain why they lacked documentation to support their position. Based upon the record, petitioners did not establish that any exception to the inclusion in income of the distributions or to the application of the 10-percent increase in *572 tax appertains. See Rule 142(a). Respondent's determination is, therefore, sustained. D. State Income Tax Refund
Respondent determined that petitioners must include in income for 1987 a Maryland income tax refund of $ 239. Petitioners, relying on testimony, claim that they were not required to include the refund in income since they did not itemize deductions for the tax year of the refund, which they assert to be 1986. No other evidence was offered that the year to which the refund related was 1986. Thus, they have failed to persuade us that the tax benefit rule is applicable with respect to this item. See sec. 111(a). Respondent is sustained. Issue 2. Schedule C Expenses
A. Entertainment, Travel, and Meal Deductions
Petitioner, for both of the years at issue, claimed Schedule C business deductions for entertainment, travel, or meals arising in part from payments to various organizations including the American Legion and Amvets. In 1986, 181 checks in the amount of $ 11,333 were written to such organizations and petitioner deducted $ 11,019 for entertainment and travel. In 1987, petitioner wrote 160 checks to such organizations in the amount of $ 11,908 *573 and deducted $ 8,605 in travel and $ 5,120 in meals. [4] Respondent disallowed these deductions in full for both of the years in issue, except for $ 285 in travel expenses for 1987. Petitioners have failed to persuade us that they are entitled to these deductions under section 162 or that these deductions meet the substantiation requirements of section 274. Petitioners have the burden to prove that they are entitled to deductions for business expenses under section 162. Rule 142(a). This requires a showing that the expenses are ordinary and necessary. Sec. 162(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner testified that the American Legion and the Amvets posts had bars and that he frequented these places to solicit business and entertain clients. However, petitioner also testified that he visited these bars to drink, sometimes staying from opening to closing. He further testified that *574 he was motivated sometimes to give his money away or spend it on drink, since he believed that the IRS was going to take away all of his funds. On some days petitioner would write several checks amounting to as much as $ 300 to the same organization (primarily American Legion and Amvets). Petitioners claimed on their returns that these transfers constituted entertainment, travel, or meal expenses. Although a business may legitimately incur entertainment expenses, we find the circumstances of this case to fall outside the bounds of what would be considered ordinary or necessary. In this regard, petitioners provided no documentary evidence or corroborative testimony to support a finding that such expenses were linked to the potential generation of business nor that such expenses were customary or reasonably related to petitioner's landscaping business. We find petitioner's testimony to be too vague or suspect to support on its own the claimed Schedule C deductions relating to entertainment, travel, and meals to the extent disallowed by respondent. We are not persuaded on the basis of the record that the amounts in issue represent expenses deductible under section 162. Even assuming, *575 arguendo, that the expenditures in question constituted deductible business expenses pursuant to section 162, petitioners would not be entitled to deduct the expenses since they failed to satisfy section 274(a)(1)(A) with respect to petitioner's entertainment expenses and to substantiate under section 274(d) petitioner's entertainment and travel expenses. Petitioners have not shown that petitioner's entertainment expenses preceded or followed substantial and bona fide business discussions and were associated with the active conduct of petitioner's landscaping business. See sec. 274(a)(1)(A). Petitioners have also not substantiated by adequate records any travel expenses or by sufficient evidence corroborating petitioner's own testimony, with respect to the entertainment and meal expenses, the business purpose of the expense and the relationship to the taxpayer of persons entertained. See sec. 274(d). The canceled checks offered by petitioner to a named payee do not support, by themselves, business expenditures to which section 274(d) applies. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.
Based on the record, petitioners have not persuaded us that respondent erred in disallowing *576 the entertainment, travel, and meal expenses claimed, except to the extent allowed by respondent, as Schedule C business deductions for the years at issue. B. Charitable Deductions
Petitioners appear to assert, in the alternative, that the aforementioned checks, rather than being payments for entertainment, travel, or meal expenses as reported, represented charitable contributions. [5] Respondent maintains that petitioner received consideration in exchange for the checks (e.g., food and drink). We agree with respondent. The evidence adduced by petitioners, primarily petitioner's testimony and a listing of checks made *577 payable to numerous apparently charitable organizations, does not persuade us that these payments constitute charitable contributions. Petitioner testified that he often went to the bars, located on the premises of the American Legion and Amvets, the organizations that received most of the amounts at issue, to drink, and the record shows that on numerous occasions multiple checks were written to the same organization on the same day. Petitioner testified these organizations had a maximum check limit, and apparently he relies on this circumstance to show that, on days he exceeded that amount, the difference must represent donations. According to this argument, on some days he contributed nearly $ 300 by means of separate checks to the American Legion. We are not persuaded by petitioner's testimony that these actions manifested his generosity. Thus, we hold that petitioners have failed to show in the alternative that the amounts claimed as deductions for entertainment, travel, and meals were actually donations, nor that they are entitled to the charitable contribution claimed on their 1986 return. C. Car and Truck Expenses
Petitioner used six vehicles in 1986 and 1987, including *578 a 1966 step van, a 1965 pickup truck, a 1986 Yugo, a 1973 Dodge, a 1976 Cadillac, and a 1976 Firebird. The step van was owned by petitioner and the other five vehicles by Barbara Watkins (Watkins). Petitioner testified that he hired the vehicles from Watkins in exchange for paying all expenses related to them, including the cost of repairs, insurance, and fees, and in lieu of paying a daily rate for their use. Petitioner claimed Schedule C car and truck deductions in the amount of $ 6,185 for 1986. Petitioner produced for respondent checks substantiated by receipts in the amount of $ 4,870 and checks without receipts in the amount of $ 2,594. Respondent disallowed $ 300 of the car and truck deductions reported for 1986 in her notice of deficiency. Petitioners have the burden of proof to show that respondent erred in her disallowance of a portion of the deduction claimed on the return. Rule 142(a). Although petitioner testified that Watkins' vehicles were used at least in part in his business, petitioners presented no other evidence at trial linking their use to business expenses deductible under section 162, nor did they introduce any agreement between petitioner and Watkins *579 regarding the use of her vehicles. Petitioner's testimony was too vague to entitle petitioners to car and truck expenses greater than allowed by respondent for 1986. [6]
With respect to petitioners' 1987 return, respondent disallowed $ 3,940 of the $ 8,403 claimed as a Schedule C car and truck deductions. Respondent now concedes $ 904.86 of the amount disallowed. Petitioners rely on the same general argument as presented above in addressing the 1986 car and truck deductions. This argument is no more effective with respect to the claimed 1987 deductions. Petitioner has not persuaded us that respondent erred in her disallowance of the remaining expenses. See Rule 142(a). D. Insurance
Petitioner paid $ 2,781 for insurance in 1986 and reported a Schedule C insurance deduction of $ 1,854. *580 Respondent disallowed $ 453 of this amount as attributable to personal expenses. Petitioner paid $ 3,708.64 in insurance expenses in 1987 and deducted $ 3,034 of this amount on Schedule C. Respondent disallowed $ 1,735 of this amount. Petitioners for both of the years at issue presented only the testimony of petitioner as to the linkage between the insurance policies and petitioner's business. Based on this record, petitioners have failed to show that, for each of the years at issue, they were entitled to insurance expense deductions in amounts greater than allowed by respondent. E. Wage Expenses
Petitioner deducted $ 19,589 in wage expenses for 1986. Respondent disallowed $ 2,329 of this deduction, but at trial conceded an additional $ 604.85. Some of the disallowed wage expenses were allegedly indirect payments to petitioner's daughter and stepbrother for services performed by them for petitioner's business. Petitioner claims that his daughter worked for him and that he compensated her by paying for the cost of her education at a local church school and for a certain life insurance policy. We are not persuaded that the amounts represented compensation to his daughter *581 instead of being payments for her welfare. In this regard, we note that no Form W-2 was produced to substantiate her employment. Petitioner also asserts that his business paid his stepbrother's auto insurance in 1986 and 1987, in total $ 234.27. Savage testified that these funds were an advance to him for future labor and also that he did not have a checking account. It appears to us that this amount was paid as compensation in 1986. Respondent's determination is sustained to the extent it is adjusted for respondent's concession in the stipulation and our allowance of the aforementioned indirect compensation to Savage. F. Taxes
Petitioner claimed a 1986 Schedule C deduction for taxes in the amount of $ 5,280.21 of which respondent disallowed $ 4,370. Petitioner produced no evidence showing that his business paid the claimed taxes. Instead petitioner asserts that this deduction covers sundry expenses, including the cost of such items as a puppy, food, and a moped. Petitioner testified that he had acquired the puppy hoping that it would eventually serve as a guard dog. He concluded within several months that the animal was unsuitable for this purpose. Petitioner also *582 testified that the purpose of the moped was to provide economical transportation for his business and that it also failed to fulfill his expectations. Other than this testimony as to the purpose of some of the items that the deduction for taxes allegedly comprised, which does not persuade us, no further evidence was offered to support petitioners' claim to ordinary and necessary business expenses in an amount above that allowed by respondent. See sec. 162(a). In light of the foregoing, respondent's determination is sustained. Issue 3. Self-Employment Tax
Respondent determined that petitioners are liable for self-employment tax to the extent of petitioner's self-employment income, since the Schedule C income attributable to petitioner's business, after incorporating respondent's adjustments, exceeded $ 400. See secs. 1401(a), 1402(b). As petitioners did not introduce any evidence regarding liability for the self-employment tax, respondent's determination is sustained to the extent of petitioner's self-employment income after taking into account respondent's concessions and our holdings in this Opinion. Issue 4. Additions to Tax
A. Negligence
Respondent *583 determined that petitioners were liable for negligence pursuant to section 6653(a)(1)(A) and (B). Negligence is defined as the lack of due care or failure to do what a reasonably prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Petitioners bear the burden of proof with respect to this issue. Rule 142(a). The record supports the imposition of the addition to tax under section 6653(a) to the extent that respondent's determinations have not been conceded and have been sustained by this Opinion. In this regard, petitioner failed to maintain proper records to substantiate his claims, and numerous deductions claimed under section 162(a) appeared to be personal in nature. Furthermore, petitioners, whether intentionally or not, reported Schedule C business deductions that they disavowed at trial. They claimed instead that these amounts were actually attributable to other deductions. In light of the record, the imposition of this addition to tax is warranted. Although petitioners' return was prepared by a third party, petitioners are not thereby relieved of liability for negligence. They failed to prove that their *584 return preparer had been given the correct information in preparing the return and that the errors in the returns were attributable to the preparer's mistakes. See Daugherty v. Commissioner, 78 T.C. 623 (1982). B. Substantial Understatement
Section 6661 imposes an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. To determine the amount of the understatement for purposes of section 6661, the understatement is reduced by the items for which the taxpayer has substantial authority for his tax treatment or which the taxpayer has adequately disclosed on the return. In the instant case, the correct tax for each of the years at issue was less than $ 50,000 and the corresponding understatement exceeds $ 5,000 for each year. The minimum requirements of section 6661 are thus met. Petitioners have not shown that they had substantial authority for any part of their understatement nor that they made adequate disclosure of the items on their returns. Respondent's *585 determination is, therefore, sustained. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
*. 50 percent of the interest due on the underpayment which is attributable to negligence or intentional disregard of rules or regulations.↩
2. Petitioners also claimed a charitable contribution deduction in the amount of $ 469 on their 1986 return, which respondent disallowed in the statutory notice. Their entitlement to this deduction will be addressed in the section of this Opinion covering petitioners' disallowed Schedule C deductions.↩
3. According to the stipulation of facts, the unexplained deposits deemed Schedule C income were $ 9,168 and $ 10,828 for 1986 and 1987, respectively. With respect to the amount for 1987, respondent conceded that $ 2,527 of the deposits was attributable to insurance reimbursement and redeposits. As regards 1986, the increase in unexplained deposits of $ 67, compared to the statutory notice, will not be considered since it was not raised in respondent's pleading. Brooks v. Commissioner, 36 T.C. 1128↩ (1961).
4. The record contains no other specific documentary evidence to support these claimed deductions.↩
5. No explanation was offered by petitioners as to why these alleged donations were reported as entertainment, travel, or meal expenses. This circumstance is all the more peculiar since on the 1986 summary sheet that petitioner provided to his tax preparer the amount, reported on petitioners' 1986 return as Schedule C entertainment and travel deductions, was listed as attributable to donations.↩
6. In particular, petitioner claimed that the cost to rebuild a motor was a deductible expense. This item is a capital expenditure. See West Virginia Steel Corp. v. Commissioner, 34 T.C. 851, 859↩ (1960).